Getty Oil Company (Eastern Operations), Inc. *v.* Zoning Hearing Board of Bristol Township and Township of Bristol. Township of Bristol, Appellant.

Argued October 9, 1975, before Judges CRUMLISH, JR., KRAMER and WILKINSON, JR., sitting as a panel of three.

*Leonard B. Sokolove,* for appellant.

*Samuel Glantz,* with him *Eugene F. Brazil,* for appellee.

OPINION BY JUDGE KRAMER, December 12, 1975:

This is an appeal by the Township of Bristol from an order of the Court of Common Pleas of Bucks County dated January 2, 1975, in which the court reversed a decision of the Zoning Hearing Board of the Township and directed that a building permit be issued to Getty Oil Company. The only issue is the applicability of Section

1000(2)(b) of the Township's zoning ordinance. We affirm the lower court.

Getty has, since 1955, operated an automobile service station of approximately 1,600 square feet on the subject property. In 1974, Getty applied for a building permit to allow for the demolition of the station and its replacement by a new, smaller station covering only 300 square feet. The new station would be built on a portion of the same foundation that supports the existing station, and unlike the existing station would not accommodate any automotive repair facilities.

The land in question is zoned "C-Commercial,"[1] and a service station is a permitted use in this district. There is some indication in the record and in Getty's brief that Getty secured a special exception to permit construction of the original station, although the reason for the need to secure a special exception is unclear.

The lower court took no additional evidence and, in such cases, our scope of review is to determine whether the Board committed an error of law or an abuse of discretion. *Grace Building Co., Inc. v. Hatfield Township,* 16 Pa. Commonwealth Ct. 530, 329 A.2d 925 (1974).

The Township argues that Getty was required, under Section 1000(2)(b) of the ordinance, to seek a special exception, and that the Board "did not abuse its discretion in denying the requested exception". We note, however, that Getty never applied for a special exception. Its appeal to the Board was denominated "[an appeal] from revocation of building permit." The Board made a conclusion of law that a special exception was required and generally treated Getty's appeal as a request for a special exception.

---

1.  This case comes to us in a confusing factual posture. The record and briefs disclose uncertainty about exactly how the subject property is presently zoned. In light of the result we reach, we do not pass upon the issue raised by the Township concerning the proper zoning classification, and we assume, for the purposes of this opinion, that the land is zoned "C-Commercial," as the Township contends.

Section 1000(2)(b) of the ordinance, applicable to "nonconforming buildings or uses," other than residential uses, reads as follows:

"b. Any other *extension* of a nonconforming use of land and/or buildings shall be permitted only upon the grant of a special exception of the Zoning Board of Adjustment, which shall be subject to the following conditions:

"(1) Any *enlargement of an existing building* or construction of a new building or buildings shall conform to the area, yard and height regulations of the district in which such use is located.

"(2) The special exception shall be granted only in strict conformity with the provision of Section 1015 of this Ordinance.

"(3) The *extension, enlargement of construction* shall amount to not more than twenty-five (25) percent of the total floor area existing nonconforming building, and the land area included in the proposed extension, whether or not buildings are involved, shall not exceed twenty-five (25) percent of the land so used." (Sic) (Emphasis added.)

The Township never identifies the nature of the alleged nonconformance of the subject property, but, considering that a service station is a permitted use in the "C-Commercial" district, we assume that the alleged nonconformance is related to the size or location of the building.

The Township's entire argument rests upon the assumption that the Board had the power to pass upon Getty's appeal under Section 1000(2)(b) of the ordinance. This power is lacking for two reasons.

First, we note that the title of Section 1000 reads "NONCONFORMING BUILDINGS OR USES," and Section 1500 (14) of the ordinance (the definition section) defines the term "[n]onconforming [b]uilding or

[u]se" as "[a] building or a use of land or of a building existing at the effective date of this Ordinance which does not conform with the requirements of this Ordinance." The ordinance was enacted in 1952, and Getty's existing use did not commence until 1955. It thus appears that Section 1000 of the ordinance only gives the Board the authority to pass upon (or require application for) special exceptions which relate to property which represents, in the legal sense, a *prior* nonconformance.

Second, we note that Section 1000(2)(b) only requires the special exception procedure when an *extension* of a nonconforming building is proposed. Assuming that the building is nonconforming in the sense the ordinance requires, Getty's plans can hardly be deemed an extension of the nonconformance. The proposed building is 1,300 square feet smaller than the existing building, and will not include the automotive repair facilities presently existing. The number of pump islands will remain the same, and the entire structure will be built within the building line of the old station. There is speculation in the record about a possible increase in gasoline sales as a result of the construction of a more attractive and accessible station, but we see no justification for considering this possible increase in the volume of business as a basis for characterizing Getty's plans as an extension of a nonconforming *building*. As we have pointed out, the *use* of the property as a service station is permitted in the commercial district.

In light of the above, we affirm the order of the lower court.